## Wytheville.

### KANE v. QUILLIN AND OTHERS.

June 28, 1905.

1. FRAUD—*Undue Influence—Case in Judgment.*—The deed of trust and rental contract sought to be vacated in this suit were obtained from the maker, a widow woman living in the county, by the beneficiary in said deed and contract, under circumstances which created upon her mind the impression that such beneficiary had it in his power to sell her property for the satisfaction of his demands, the principal part of which was barred by the statute of limitations, and that the only mode of postponing this disaster was by executing the deed and contract, and so amounted to undue influence on account of which the same should be set aside.

Appeal from a decree of the Circuit Court of Scott county in a suit in chancery.   Decree for the complainant.   Defendant appeals.

*Affirmed.*

The opinion states the case.

*Bullitt & Kelly* and *Roberts & Roberts,* for the appellant.

*Jackson & Coleman,* for the appellees.

KEITH, P., delivered the opinion of the court.

William B. Quillin purchased a lot of ground in Gate city in 1874 from H. W. Holdway, and in 1887 caused a deed for it to be made to his wife, as her separate estate.  Shortly there-

after Edmonds, a judgment creditor, filed a bill in Scott county, to subject this lot to the payment of judgments against him, alleging that the purchase price had been paid by Quillin, and that the deed to his wife was in fraud of his rights. A decree was entered · maintaining the claims of the creditor, but an arrangement was made by which the debts were otherwise provided for, and the property was not sold.

After Edmonds had obtained a decree for sale, H. S. Kane, also a judgment creditor of Quillin, filed his petition in that suit, but no action was taken upon it, and the suit was afterwards dropped from the docket with the assent of Kane, who also expected to be paid the· amount due him from another source.

In 1899 Quillin died, and in February, 1901, H. S. Kane procured a deed of trust from Mrs. Quillin, by which she conveyed the lot in Gate city to R. F. McConnell, as trustee, to secure two judgments which Kane had obtained against her husband in his lifetime.

In May, 1901, Mrs. Quillin filed her bill in chancery against Kane and R. F. McConnell, trustee, in which she states the circumstances connected with the deed executed by her in February, 1901. Her account of the transaction is that Kane, in company with G. W. Mann, a justice of the peace, came to her house and informed her that he had a judgment and could sell her house and lot to satisfy the same, but that he did not desire to put her to any costs, and that he had come to see her to get her to rent the house to satisfy his judgment as well as other debts he had against her late husband; that he read a paper to her, which he said was an agreement to that effect, and requested her to sign it, which she did; and that he then read to her another paper which she has since learned was a trust deed, securing the payment to Kane of a large sum of money, and she avers that she was so overcome at the time, believing the statements made by Kane were true, that her home was about to be sold from her, that she did not fully

comprehend the facts, nor realize the results of her acts, and in her excitement she was induced to sign the two papers; that she believed from the statements made by Kane that he did have judgments against her husband, by force of which he could and would sell her house and lot, and that, acting upon this belief, and in order to save her home from sale, she signed the trust deed and other writing in question. She then charges that the statements made by Kane were false, and that he knew them to be false when he made them; that he had no judgment or any other debt against her husband to satisfy for which he could sell her property, or which was a lien upon it; that it was true that in the year 1892 he had obtained a judgment against her husband for $24.60, and that he had recovered against her husband another judgment long before that time, both of which were at the time she executed the deed barred by the statute of limitations.

Kane answered this bill, denying all fraud and misrepresentation. He says that he explained to the complainant the whole transaction; that a suit was instituted by Edmonds against Quillin, herself and others in 1887, in which the deed from Holdway to her was declared void as to the debts of Edmonds and others, and that respondent had filed his petition in said suit for the purpose of having his judgment for $152.27 paid out of the house and lot, and could have had the same subjected but for an arrangement he had made, by which he expected to receive the money due him. He alleges that complainant signed the deed of trust and rental agreement after full explanation, and without undue influence, and he denies that the judgments, or either of them, are barred by the statute of limitations, or that they have been in any way paid or satisfied.

Mrs. Quillin's deposition was taken, in which she reiterates and amplifies all the facts charged in her bill. The deposition of Kane, the defendant, was also taken. He admits that he went to the house of the plaintiff in company with a justice

of the peace, with an agreement providing for the rental of the property and the payment of the rent to him, and with the deed of trust ready to be executed; and to that extent his testimony is not in conflict with that of complainant.

G. W. Mann, the justice of the peace, also testified. He describes the visit made by him in company with Mr. Kane to the house of Mrs. Quillin, and states that the interview between them seemed to be friendly and pleasant; that he observed no unusual excitement upon the part of the plaintiff; and that Mr. Kane explained to her the origin of the debt, the moral obligation which, from his point of view, rested upon her to pay it; requested her to sign the trust deed which had been prepared, and suggested that she pay the debt out of the rent of the property at Gate City, and thereby save the sale of the property under the trust deed, and to this she agreed, and signed the papers which were offered to her for signature. This witness was asked at the close of his examination: "Did Mr. Kane tell Mrs. Quillin that he could enforce his judgments against the house and lot which was conveyed by the trust deed, but he did not wish to put her to such costs and trouble, and would not do so if she would sign the trust deed, and that he thought it would be best for her to sign the trust deed? A. I don't think he said he could enforce them, but he told her that he thought he would come and see her before he took any steps to enforce them, and see if he could not adjust the matter agreeably. Q. Was or not the effect of his conversation calculated to lead Mrs. Quillin to believe that he could sell her house and lot for the satisfaction of his judgments, and that he would do so if she did not adjust the matter? A. The conversation had in connection with the papers would lead a person of ordinary prudence to so think."

Upon the evidence the Circuit Court was of opinion that the plaintiff was entitled to the relief prayed for in her bill, and decreed that the deed and contract in the pleadings mentioned be set aside and vacated, and the case is before us upon the appeal taken by H. S. Kane, one of the defendants.

We consider the following facts proved by the evidence: H. S. Kane, in company with a justice of the peace, called upon Mrs. Quillin, a widow woman living in the country, taking with him copies of certain judgments which he had obtained against her husband, with a contract providing for the renting of her house and lot, and a deed of trust upon it to secure his debts, and accompanied by a justice of the peace, and by his representations and the exhibition of the copies of the judgments and papers, their effect doubtless strengthened by the presence of the justice of the peace, whether intentionally or not, created upon her mind the impression that he had it in his power to sell her property for the satisfaction of his demands, and that the only mode of postponing this disaster was by signing the rental agreement, which placed the rents of the house and lot at his disposition, and the deed of trust as ultimate security for the satisfaction of the judgments.    It further appears that the principal judgment having been obtained more than ten years prior to the death of Quillin, the judgment debtor, and no execution having been issued upon it, was barred by the statute of limitations.    Without considering whether or not the judgment for $24.60, obtained in 1892, was or was not barred at the date of the execution of the deed of trust, we are of opinion that appellant obtained the deed of trust and the rental contract from Mrs. Quillin by the exercise of undue influence, and that there is no error in the decree of the Circuit Court, which is affirmed.

We are opinion, however, that the affirmance should be without prejudice to the right of the appellant to subject the house and lot in Gate City to the payment of the last mentioned judgment, provided he is able to aver and prove actual fraud on the part of W. B. Quillin and his wife, Martha Quillin, in the deed of Holdway and wife, executed in 1887.

*Affirmed.*